HEARD NOVEMBER TERM, 1874.

RICHARDSON vs. CHAPPELL.

Under Statutes 3 and 4 W. and M., and 5 Geo. II, Chap. 7, lands purchased from a devisee are not liable for the debts of the devisor where the purchase was *bona fide*, for valuable consideration and without notice.

The question whether the purchaser had notice is one of fact, and the conclusion thereon of the Circuit Judge will not be disturbed, unless he acts in the face and against the force of overbearing testimony.

In considering the equity of a purchaser from a devisee for valuable consideration and without notice, the Court will not, where the purchase was *bona fide*, look into the amount or adequacy of the consideration paid. And where, in such a case, a large part of the purchase money was paid, notes of the purchaser given for the balance and a conveyance was executed: *Held*, That the sale was complete, and the purchaser entitled to the benefit of the defense.

Where a *bona fide* purchaser from a devisee for valuable consideration and without notice has given his notes for part of the purchase money, the equity of a creditor of the devisor is not against the land in the hands of the purchaser, but against the notes as long as they remain assets in the hands of the devisee, and to compel the purchaser to pay them; but there is no lien on the land to secure their payment.

BEFORE MOSES, J., AT NEWBERRY, AUGUST, 1873.

This was a bill in equity, exhibited on the 16th day of May, 1867, by Sarah S. Richardson, plaintiff, against Thomas H. Chappell and Julia W. Chappell, qualified executors of John Chappell, deceased, Rosalie Simkins, Eldred Simkins and others, widow and children and heirs of John C. Simkins, deceased, John W. Payne and C. D. Spearman, executors, and Margaret S. Payne and others, heirs of B. F. Payne, deceased, defendants. All other persons interested in the subject matter of the suit were also made parties defendant.

The only questions made on the appeal related to what were called in the proceedings the Neck plantation and the Payne land,

and the case, so far as it related to those lands, and as found in the pleadings, proofs, report of the Referee, James Hemphill, Esq , and decree of the Circuit Judge, is as follows:

On the 22d day of October, 1845, John Chappell was appointed by the Court of Equity for Edgefield District guardian of the plaintiff, and gave bond, with sureties, bearing that date. He received the plaintiff's estate, and died on the 23d day of May, 1857, before she had arrived at the age of twenty-one years. He left of force a last will and testament, of which his sons, Thomas H. Chappell, John W. Chappell, James B. Chappell and Stanmore B. Chappell, were appointed executors. The will was duly proved in the Ordinary's office, and on the 13th day of May, 1857, Thomas H. Chappell and John W. Chappell alone qualified as executors.

The testator, John Chappell, after directing that all his just debts and funeral expenses be paid, devised and bequeathed, *inter alia*, as follows: The Neck plantation he devised one-half thereof to his son James B. Chappell, in fee, and the other half thereof to his son Stanmore B. Chappell, during the life of his mother, Elizabeth S. Chappell, and at her death to his son John W. Chappell, in fee.

On the 11th day of February, 1859, James B. Chappell, Stanmore B. Chappell and John W. Chappell, for and in consideration of the sum of $16,434 to them paid, as recited in the deed, sold and conveyed the Neck plantation, containing 913 acres, more or less, to John C. Simkins. The deed contained the usual covenant of warranty, and Thomas H. Chappell was a subscribing witness thereto. Of the purchase money, the sum of $5,000 was paid in cash and the remainder secured by three sealed notes of John C. Simkins, each for $3,811, payable in one, two and three years, to James B. Chappell.

On the       day of February, 1860, James B. Chappell, John W. Chappell, Thomas H. Chappell and Stanmore B. Chappell signed a written instrument whereby they agreed with John C. Simkins to cause to be paid all debts then outstanding against the estate of the said John Chappell, and to save harmless him, his heirs and assigns from all liability to pay the same. John C. Simkins died on the       day of July, 1863.

The tract of land called the Payne land was devised by the testator to his son Thomas H. Chappell, in fee, who, after the death

of his father, sold it to R. M. Scurry. On the 8th day of February, 1861, Scurry sold and conveyed it to B. F. Payne, who died on the 14th day of February, 1867, leaving a will, of which J. W. Payne and C. D. Spearman were executors. His wife, Margaret S. Payne, and three children survived him.

The eleventh clause of the will of John Chappell directed that the personal property of the testator not bequeathed by him should be sold by his executors and the proceeds applied to the payment of his debts; and it was proved that Thomas H. Chappell, the acting executor, had sold of this property to the amount of $13,000, and had applied $10,000 thereof to the debts of the testator.

The plaintiff had no guardian after the death of John Chappell. She arrived at age on the 25th day of December, 1861, and on the 16th day of May, 1867, she exhibited this bill. The prayer was for a decree for the amount due her by the estate of her late guardian against his executors and legatees, and against the sureties on his guardianship bond, and to make the funds and property received by his devisees and legatees specifically liable for her claim; and, for that purpose, the bill asked that all deeds which had been made by the devisees of any real estate devised by the will of the testator be canceled and set aside, and for general relief.

The defendant, Rosalie M. Simkins, answered the bill and set forth at considerable length the circumstances connected with the purchase by her late husband of the Neck plantation. She relied for her defense mainly on the ground that John C. Simkins was a *bona fide* purchaser for value within the sense of the Statutes 3 and 4 W. and M. She also relied upon the equitable defense of purchase for valuable consideration without notice. An answer on behalf of the infant children of John C. Simkins was also filed. The representatives of B. F. Payne, deceased, relied substantially upon the same grounds of defense, so far as the tract of land they held was concerned; they also relied upon the Statute of Limitations as a further defense.

At the reference, it was proved that the plaintiff's demand against her late guardian had never been formally presented to his executors as a claim against his estate. No account thereof was taken, nor was the amount proved, but the Referee reported that the guardian had received a large sum of money for his ward which had not been paid to her. It was further proved that payments were made on

two of the sealed notes given for purchase money of the Neck plant-
ation by John C. Simkins in his lifetime, and his representatives
after his death, after he had notice that the estate of the testator
was indebted to the plaintiff, and that one of the notes was still un-
paid. Upon the question whether he had notice or knowledge of
the plaintiff's claim before or at the time of his purchase, there was
no direct evidence, but circumstances were proved from which a
conclusion might be drawn one way or the other.

There was ·evidence tending to show that Thomas H. Chappell
had possession of the Payne land, claiming it as his own, and that
he paid taxes for it from October, 1847, until he sold it to Scurry
after the death of the testator.

The Referee reported that he was satisfied from the testimony
that the purchase by John C. Simkins of the Neck plantation was
*bona fide* within the sense of the statutes 3 and 4 W. and M., 5 Stat.,
534, and that said plantation was not specifically liable to plaintiff's
claim. He cited *Sporkman* vs. *Timbrell*, 8 Sim., 253, and *Richard-
son* vs. *Horton*, 7 Bev., 124, as authorities directly in point.

He also reported that the Payne land was not liable to plaintiff's
claim, on the ground that it was protected from such claim by the
Statute of Limitations.

The plaintiff excepted to the report of the Referee on the follow-
ing grounds:

1. That the Referee omitted to state as facts well and satisfac-
torily proved before him, that the Neck plantation was the property
of John Chappell, deceased; that John C. Simkins, and those
claiming under him, knew the source of title, and that it was at his
death subject to his debts.

2. That the Referee omitted to include in his findings the facts
well and clearly proved that the claim of the plaintiff was known
to John C. Simkins in his lifetime, at least after the first payment
made by him on the purchase of the Neck plantation, and was
known to his heirs at law, his personal representatives and agents,
after his decease.

3. That the Referee omitted to state as a fact, in his findings,
that John C. Simkins, deceased, by written indemnity, secured him-
self against payments to be made and made upon the purchase
money of the Neck plantation to this vendor.

4. That the Referee omitted to state, in his findings of facts, that,
after all the knowledge set forth in the above exceptions, the per-

sonal representatives of John C. Simkins, deceased, and John C. Simkins himself paid large sums of money on the purchase of the Neck plantation to their vendors, the Chappells.

5. That the Referee omitted to state that a part of the purchase money is still due on the Neck plantation, and unpaid by the personal representatives of John C. Simkins, deceased.

6. That the equity of the plaintiff being that of a creditor, was superior to that of the vendors, the Chappels, who were only volunteers.

7. That the Referee should have declared that J. C. Simkins, and those taking under him, should have held the Neck plantation as a trust, subject to plaintiff's claim, and clearly so after notice given to them of such claim, or knowledge thereof.

8. That the Referee should have held that the unpaid purchase money above set forth should be paid to the plaintiff.

9. That the Referee should have found the Neck plantation, or the proceeds of the Neck plantation, assets of the estate of John Chappell, deceased, and under the facts stated above, and found liable in the hands of the representatives and heirs of John C. Simkins, deceased, for payment of John Chappell's debts.

10. Because the Referee erred in deciding, as matter of law, that the land willed to Thomas H. Chappell, conveyed by him to B. F. Payne, was not liable to the plaintiff's claim, but was protected by the Statute of Limitations.

His Honor the presiding Judge reviewed the evidence upon the question whether John C. Simkins was a purchaser of the Neck plantation without notice, and his conclusion was that he had no notice of the debt due to the plaintiff at the time of his purchase. He ruled that Simkins was a *bona fide* purchaser, and, as such, was protected by the equity of Statute 3 and 4 W. and M., as to so much of the purchase money as had been paid before bill filed; but he decreed that the Neck plantation was specifically liable for so much of the outstanding sealed note as remained unpaid. He held, as to the Payne land, that the purchase money had all been paid; that the sale to Scurry was *bona fide* and without notice, and that the owners were entitled to the protection of the same statute above named, and he decreed accordingly.

The plaintiff and the defendants, representatives of John C. Simkins, deceased, both appealed—the former on the ground that the

whole of the Neck plantation, and also the Payne land, should have been held specifically liable for the plaintiff's claim, and the latter on the ground that it was error to decree that the Neck plantation was specifically liable for the amount due on the unpaid note given for the purchase money.

*Thomson,* with whom were *Jones & Jones,* and *Addison,* for plaintiff:

1. That the sale of the Simkins land was made by devisees only; the executors had no agency in it.

(*a.*) As a fact, the sale was by the devisees only.

2. That the debts were charged by the will on the land, and so as to authorize the executors to sell.—2 Jarm. on Wills, 368, *et seq.;* 1 Roper on Leg., 448, note L; 2 Williams on Executors, 1212, note L as to late cases; Hawkins on Wills, 282.

3. A sale by a devisee of lands subject to a testamentary charge, with debts of testator unpaid, will not bar executors having a power of sale from selling for payment of debts, nor prevent a sale by Court for such purpose.—*Baldwin* vs. *Cooley,* 1 S. C., 261.

4. If the executors had a power of sale, the bond of indemnity does not take away the power of sale nor create an equitable right in the purchaser.

(*a.*) If available for any purpose other than notice, it disposes of assets without valuable consideration, and is thus void as to creditors.—2 Spence Eq. Jurisprudence, 379; *Pagett* vs. *Hoskins,* Gilbert Eq. Rep., 111.

5. A devise of lands, with no testamentary charge on realty or other full and sufficient provision for payment of debts, is fraudulent under the tatute of W. and M., and the alienee of the devisee has no valid title.—2 Statutes at Large, 533, 534; Revised Statutes, 463; 1 Spence Eq. Jur., 313; *Hughes* vs. *Doulben,* 2 Bro. Ch., 614; General Statutes, 444, § 15.

(*a.*) No proof of fraud required. The devise is of itself fraudulent where the debts are unpaid.—5 Fisher's Com. Law Dig., 9100.

6. A purchaser of lands sold by executors having power to sell, as well as by devisees, with knowlege of unpaid debts charged by the will upon the land, or with knowledge of unpaid debts generally, should regard himself as dealing with assets of the estate and pay money only to the executors. A payment to devisees is a willful misapplication of assets, whether done with or without the consent

of the executors. The principle is that the transaction itself gives the purchaser notice of the misapplication, and necessarily involves his participation in the breach of duty.—2 Williams on Executors, 674, note V.

(*a.*) And in such case the same principle applies to realty as personalty.—*Watkins* v. *Cheek*, 2 Sim. & Stu., 199.

7. In no sense was the deed to John Simkins the proper act and deed of the executors as such.

(*a.*) As a fact, the executors did not sell; only two of them qualified. One could not convey.

(*b.*) The deed purports to be act of persons for themselves.

(*c.*) The executors had no power by will to sell.—Revised Statutes, 469, § 1. Cases cited on margin.

*Baxter*, with whom was *McGowan* and *Youmans*, contra:

1. The deed of conveyance of the Simkins land can only be regarded as the act of a devisee aliening devised lands, and in no wise the act of the executors for any purpose contemplated by the will. The executor has no authority over a devise, unless by express authority under the will, or by clear implication.—Bacon's Abridgment, vol. 4, p. 76; *Hull* vs. *Hull*, 3 Rich. Eq., pp. 66–96, and case reported in note; also, *Bird* vs. *Houze*, Speers' Eq., 250, and *Vernon* vs. *Valk*, 2 Hill Ch., 261. Neither such express authority nor clear implication is here found.

2. The first clause of the will, wherein the testator directs the respective payments of his debts, creates no charge upon the realty devised authorizing the executors to sell, nor is the same charged by operation of law as a primary fund. The expression is formal, merely a recognition of the law, intending at most to charge the executors with the duty of paying the debts; but not to charge the land devised, because in the eleventh clause of his will the testator expressly charges the residue of his personal estate with the payment of debts, thereby negativing all supposed intention to charge the land, and thereby following the law, which makes personalty the primary fund to pay debts. Substantially the same words were used in the will in *Hull* vs. *Hull* as in Chappell's will, as to payment of debts. "If the testator directs a particular person to pay, he is presumed, in the absence of all other circumstances, to intend him to pay out of funds with which he is entrusted, and not

out of other funds over which he has no control."—Story's Eq., § 1247. There is an express charge upon the personalty to the exclusion of the land, sustained by operation of law. The residue of personalty was deemed ample—was ample, if applied to payment of debts.

3. In this case the executor under no circumstances could sell and convey, because no authority therefor can be found in the will. As the agent of the creditors, the executor could apply to the Court to enforce the liability of land devised, and before alienation by the devisee, for payment of debts; but he could do nothing otherwise—nothing more than the smallest creditor could do in his own name.

4. The bond of indemnity is an isolated fact, without bearing in any way upon the proper adjudication of this case.

5. The sale in this case is clearly valid according to the authority of 3 and 4 W. and M., Statutes at Large, vol. 2, p. 533; also as recognized and expounded in *Jones* vs. *Wightman,* which, modified in subsequent decisions as to the relative liability of certain classes of property and in other particulars, is still authority that after alienation *bona fide* by the heir, (and if by the heir certainly by the devisee,) before action brought, the creditor can only look to the heir or devisee, and hold him liable to the extent of the amount realized by the sale, but the land aliened goes free from liability. This construction is sustained by the English Courts in the construction of 3 and 4 W. and M., and a statute similar to our statute of II George, Statutes at Large, 570, as appears by cases cited on previous argument and still before the Court. A judgment against the executor or the administrator is invalid as against the devisee or heir, the devisee or heir not having been made a party.— *Vernon* vs. *Valk,* 2 Hill Ch., 259; *Gilliland & Howell* vs. *Caldwell,* 1 S. C., 194; *Reeder* vs. *Speake,* manuscript.

6. In no possible view of this case can the alienee be held accountable for the application of the money paid for either the Neck plantation or the Payne land. Between the devisee's alienee and the creditor, there is no privity. Neither Payne nor Simkins, nor their heirs, rest under any obligation, legal or equitable, to the creditors of John Chappell. The Statute of 3 and 4 W. and M. cuts off all connection whatever.

7. The Simkins deed was simply the deed of the devisees. The deed of the executors would have been worthless, because unauthorized alike by the will and by operation of law.

8. The claim of the plaintiff is not a bond debt against the heirs of Simkins and of Payne, if to be sustained at all, but merely an equity, open to the plea of the Statute of Limitations, which is sustained by the proof, ( *Wardlaw* vs. *Buzzard,* 15 Rich. L., 162,) of questionable authority, and to be considered.

9. The *bona fide* character of the sale of both the Simkins land and the Payne land is sustained by the proof.

10. The proper parties are not before this Court, nor were they before the Court below. The legal representatives of both Simkins and Payne should be before the Court to contest the right of the plaintiff, which is in conflict with the claims of the creditors of Simkins and Payne respectively, and to settle the question of conflicting equities which therein arise; and, therefore, the plaintiff's appeal should be dismissed.

11. The defendants are harassed herein to their great cost, where no judgment for any exact amount has been rendered in this suit against any one which these defendants have been allowed to canvass or controvert; and, therefore, the plaintiff's appeal should be dismissed.

12. The heirs of Payne have the protection of a perfected title in T. H. Chappell, their alienor, before the death of the testator—a fact established by the testimony, sanctioned by the report of the Referee, and tacitly sustained by the judgment below; all of which forms a complete protection, only to be overruled on overbearing testimony.—*Austin* vs. *Kinsman,* 1 S. C., 97; *Blackwood* vs. *Searles, ib.,* 116; *Williams* vs. *Beard, ib.* This is a question of fact already adjudicated.

13. The defendants, the heirs of Simkins, as appellants, submit that the judgment should not require the estate of Simkins to pay the entire purchase money yet unpaid without regard to the marshaling of the assets of that estate, whereby the amount properly applicable thereto can be ascertained, which is the only amount for which Simkins' estate should be held liable in justice to other creditors, unknown as to number or amount, because unrepresented therein.

April 23, 1875. The opinion of the Court was delivered by

WILLARD, A. J. The ground of the plaintiff's claim is the liability of John Chappell, at his decease, as guardian for her estate unaccounted for. She now seeks to subject the former estate of his

guardian to her demand, after the lapse of many years,—after it has passed into the hands of devisees, and after third persons have acquired legal rights therein through alienations by devisees.

The questions relating to the Simkins tract will be first examined as arising upon the appeals on both sides.

John Chappell devised the tract here designated, the Simkins tract, with certain limitations. J. C. Simkins became the purchaser of this tract in 1859, taking title through such devisees. He made a cash payment of $5,000 at the time of the purchase, and gave three notes in equal amounts, payable in one, two and three years, for the balance of the purchase money.

The first question to be considered is, whether the plaintiff, as a creditor of the devisor, has a right, either at law or in equity, to subject to her claim the devised lands purchased by Simkins in the hands of those taking his estate at his decease.

Whatever right the plaintiff may have at law against the devisee or his alienee is founded either upon the statute of 3 and 4 W. and M., (2 Stat., 533,) or upon 5 George II, Chap. 7. The remedy conferred by the first mentioned of those statutes is assimilated to that of the action at common law against an heir by reason of assets descended. *Bona fide* alienation by the devisee defeats the right of the creditor to pursue the land, but leaves the devisee liable personally to the value of the devised land. The right of the plaintiff at law to follow the devised lands into the hands of the alienee of the devisee depends, so far as effected by 3 and 4 W. and M., upon the question whether the alienation was *bona fide* in the sense of that statute.

5 George II makes no change in this respect. This statute has in view three distinct objects—first, to render lands "in the plantations and colonies of America" "chargeable and liable" for all debts; second, to make such lands "assets" for satisfaction of all debts "in like manner as real estates are by the law of England liable to the satisfaction of debts by bond or other specialty;" and, third, to subject real estate to all the remedies, processes and proceedings for the recovery of debts, either at law or in equity, precisely as personal property is subject.

As it regards the first object, namely, the creation of a general charge or liability against real estate for debts of all classes, its provisions will be hereafter examined with special reference to the question of the equitable rights of creditors under it. The remedial

part of the statute is that embracing the second and third objects as above stated. It is to them that we must look for the remedies that are to be taken at law under this statute. The remedies pointed out there reach to two cases—first, where the real estate thus charged is in the hands of an heir or devisee of the debtor, in which case the statute reaffirms the effect and operation of 3 and 4 W. and M., by declaring such estates "assets." As was said in *Jones* vs. *Wightman*, (1 Hill, 579,) these two statutes must be construed together, from which it would result that the proper remedy at law, in cases of that class, is an action against the heir or devisee on the ground of assets descended or devised, and the exemption as to lands *bona fide* alienated would be applicable. The second case is where lands so charged are held by some person liable to some process or proceeding in law or equity for the collection of debts, and in whose hands personal property could be subjected to such process or proceeding. This provision is, in substance, that realty so charged shall be liable to like remedies and in like manner as personal estates " are seized, extended, sold or disposed of for the satisfaction of debts."—*Martin* vs. *Latta*, 4 McC., 128, note.

A judgment recovered against the executor by the plaintiff would not have enabled her to seize the lands in question in the hands of the alienee of the devisee.—*Bird* vs. *Houze*, Speers' Eq., 250. The only mode of reaching them at law would be by an action under the statute, in which the devisee would be entitled to show *bona fide* alienation as a defense *quoad* the land.

But it is clear that creditors acquire, under 5 George II, an equity to compel the application of lands subjected by the statute to their debts. Such an equity has been constantly recognized and acted upon, and has been enforced by statute provisions intended to facilitate the application of the real estate of decedents to the payment of their debts through the powers of executors and administrators acting as representatives of the interests of creditors.

It must be concluded that this action can be maintained either as in the nature of an action at law against a devisee, his alienee being joined on the ground of assets descended, or in the nature of a bill based upon the equity of 5 George II to reach the property in question as assets applicable to the payment of debts. Regarding it in either light, if the defendant can show that the alienation was *bona fide* and for a valuable consideration and without notice, the

suit must fail as it regards the lands under immediate consideration.

It is not claimed that there was actual fraud on the part of Simkins. It is alleged, however, that he cannot be regarded as a purchaser who has paid a valuable consideration before notice of the plaintiff's equity.

On the question of notice, the conclusions of the Circuit Judge appear to conform to the evidence. There was certainly evidence in the case from which a conclusion of fact could be drawn as to whether Simkins had, at the time of purchasing, knowledge of the existence of plaintiff's claim. Simkins was dead at the time of the trial, and direct proof that he had no such notice was not attainable. It does not appear that it was in the power of the defendants to produce additional proofs, and the question of notice was properly before the Circuit Judge as a question of fact to be determined from the testimony before him. There is no overbearing weight of evidence against his conclusions such as would justify this Court in setting them aside; and it must be concluded that Simkins purchased in ignorance of plaintiff's claim as an outstanding demand against the assets of the estate.

The conclusion of the Circuit Judge on the question of notice is not prejudiced by the fact that he considered, as part of the evidence bearing on the question of notice, the facts that the claim of the plaintiff was not brought forward during the period of time when, in contemplation of law, all demands against a decedent are presented; that at the time of the sale there were personal assets in the hands of one of the executors adequate to discharging all the debts of the estate, including that due to the plaintiff; and that the dealings of the plaintiff with such executor were such as might give rise to a conclusion that such executor was holding assets appropriated to the payment of her demand at her request, and for her convenience, and at her risk. These facts may have affected the mind of Simkins in a manner bearing on the state of his knowledge, for the existence of which the conduct of the plaintiff might be in equity responsible. We are not required to say what force these circumstances should have had in the mind of the Circuit Judge, for the duty of drawing such inferences rested primarily on him, and it is only where he acts in the face of and against the force of overbearing testimony that this Court can properly disturb his conclusions. Such a case is not presented here.

It is denied that Simkins is to be considered as having paid a valuable consideration. The fact that a part of the payments that have been made upon the purchase money notes was made after notice of the plaintiff's equity, is referred to as showing that Simkins was not in the position of a purchaser who had paid the consideration of the purchase before notice. The evidence establishes the fact that the consideration of the purchase was a cash payment of $5,000 and the giving of certain notes; that the cash payment was made and the notes given accordingly, and thereupon title was conveyed to Simkins. This was a complete and executed consideration. The notes were a personal obligation of the purchaser, their subsequent payment or non-payment being immaterial as it regards the completeness of the consideration on which title was conveyed. It is not a case where the contract of purchase was inchoate by reason of the non-performance of some of the conditions or stipulations that entered into it.

In considering the equity of a purchaser for a valuable consideration without notice, the Court will not, where the purchase is *bona fide,* look into the amount or adequacy of the consideration paid.—*Bassett* vs. *Noseworthy,* 2 Lead. Cases Eq., 1; *Bush* vs. *Bush,* 3 Strob. Eq., 131. The equitable doctrine that affords protection to a purchaser is not based upon the idea that such protection is due to the *extent* only of the consideration paid, but rests on the idea that the character of an honest purchaser, who has parted with value, precludes his being subjected, as to his purchase, to equities by which his conscience is not affected.

It follows that the plaintiff had no equity as it regards the notes unpaid, as against Simkins or those who held his estate. The obligation arising on the notes was *res inter alia* as it regards the plaintiff, both legally and equitably. She might trace the notes so long as they remained assets of the estate indebted to her, and through the lawful holder of the notes reach satisfaction by compelling their payment; but in doing so she could not go beyond the rights of the holder of the note through whom she was compelled to work out satisfaction of her demand. As there was no lien on the purchased land to enforce the payment of the notes, the plaintiff can have no such lien. It follows that while the decree is correct in allowing the plaintiff to pursue whatever remedies may exist for the payment of the only note that remains due, yet it was erroneous in charging such payments upon the land specifically, or hold-

ing it as an equitable lien on the land. In this respect the decree should be modified. Subject to this modification, the decree is correct as it regards the Simkins tract.

The questions relating to the Payne tract were substantially the same as those that are presented in the case of the Simkins tract. The question of notice as a question of fact is the controlling one as it regards this tract. The conclusion of the Circuit Judge was adverse to the existence of notice. There is no clear and overbearing state of evidence affording ground for disturbing his conclusions in this respect.

It is unnecessary to consider the question of the effect of the clauses of the will directing the payment of debts, in creating a charge, generally, or in the case of lands devised to one made the executor under such will, for, whatever may be the nature of the plaintiff's equity, the defendant would stand in the same position under the plea of purchaser for a valuable consideration and without notice. If a charge was made out under the terms of the will, it would create an equity alone, and an equity no stronger than that arising under the statutes charging realty for debts of a decedent.

The decree should be modified in the manner already pointed out, and in all other respects affirmed.

*Moses*, C. J., and *Wright*, A. J., concurred.